No. 24-11586-FF

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

ELENA MUKHINA,

*Plaintiff-Appellant,*

v.

WALMART, INC.

*Defendant-Appellee.*

Appeal from the United States District Court

for the Southern District of Alabama

No.  1:22-cv-00361-JB-C

**APPELLANT'S OPENING BRIEF**

Elena Mukhina, Pro Se

13452 Rooster Ln, Foley, AL 36535

(206) 413-1296

**No. 24-11586-FF**

**Elena Mukhina v. Walmart, Inc.**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT (CIP)

Appellant, Elena Mukhina, previously filed the disclosure in accordance with the 11th Circuit Rule 26.1-1(a). (Doc 6 of the appeal docket) Appellee further filed their disclosures. (Doc 7,8 of *id.*)

Hereby Appellant is and providing the list of all known trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities, believing to be correct as per previous filings of CIP by parties:

1. Beaverstock, Honorable Jeffrey U., United States District Judge;

2. Harbuck, Jonathan S., Esq., Harbuck Keith Hunt & Palmer, LLC, attorney for Defendant/Appellee;

3. Mukhina, Elena, Plaintiff/Appellant (pro se);

4. Walmart Inc., Defendant/Appellee;

C-1 of 2

5. Wal-Mart Stores East, LP, wholly owned subsidiary of Walmart Inc.

_Eley_    07/29/24
(Signature and date), pro se

13452 Rooster Ln, Foley AL 36535
(Address)

206 413 1296
(Phone Number)

## Statement Regarding Oral Argument

Appellant does not request Oral Argument.

# Table of Contents

**Page**

Certificate Of Interested Persons and Corporate Disclosure Statement (Cip)….. C-1

Statement Regarding Oral Argument……………………………………...……. i

Table of Contents……………………………………………………………… ii

Table of Citations……………………………………………………………… v

Jurisdictional Statement………………………………………………………... xi

Statement of Issues…………………………………………………………... 1

Statement of the Case………………………………………………………….. 5

Summary of the Argument………………………………………………… 22

Argument……………………………………………………………………… 24

   I. The District Court erred in reviewing the Motion for Summary Judgment
   by not conforming with the defined Standard of Review ……………………….. 24

      1. Erroneous omission of consideration of Initial burden for Movant in
      the Motion review……………………………………………………… 24

      2. Erroneous application of additionally asserted Standards for
      reviewing Title VII claims ……………………………………………… 26

3. Erroneous placement of the burden of proof for each claim on Plaintiff, instead of defining the genuine issue for Trial ………………………... 27

II. The District Court erred in misplacing, omitting or confusing Plaintiff's claims standards of review for evaluating sufficiency of facts and evidence …... 30

III. The District Court erred in concluding Plaintiff's failure to exhaust administrative remedies with the EEOC ………………………………………... 32

IV. The District Court erred in concluding that facts and evidence on the record are insufficient to establish genuine issues for Trial …………………….. 36

1. National origin discrimination - Hostile work environment claim 36

2. Religious discrimination - Disparate impact claim ……………... 42

3. Retaliation - Retaliatory harassment …………………………… 45

V. Application of a "reasonable person" standard in reviewing claims under Title VII is unconstitutional ……………………………………………………... 49

VI. Plaintiff satisfied notification requirement for religious accommodation claim ………………………………………………………………………….. 52

VII. Judicial Bias and Prejudice against Plaintiff affected the final decision ……………………………………………………………………………… 55

1. Inappropriate comments and discussions ……………………….. 58

2. Procedural violations …………………………………………… 59

Conclusion…………………………………………………….......... 62

Certificate of Compliance …………………………………...………. xiii

Certificate of Service ……………………………………………..... xiv

## Table of Citations

**Cases**                                                          **Page**

*Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913 (11th Cir. 1994)* ………….. 1,27

*Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1248–49 (11th Cir. 2014)* …. 2,36

*Swindle v. Jefferson Cnty. Comm'n, 593 F. App'x 919 (11th Cir. 2014)* ……… 3,31

*Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010)* ………….. 4

*Johnson v. Booker T. Wash. Broad. Serv, 234 F.3d 501, 507 (11th Cir. 2000)* … 20

*Evans v. McClain of Georgia, Inc., 131 F.3d 957, 961 (11th Cir. 1997)* ….….… 20

*Ala. Educ. Ass'n v. Bentley (In re Hubbard), 803 F.3d 1298 (11th Cir. 2015)* …. 21

*FTC v. Nat'l Urological Grp., Inc., 785 F.3d 477, 481 (11th Cir.2015)* ………... 21

*Anderson v. Vanguard Car Rental USA Inc.,*
    *427 F. App'x 861, 863 (11th Cir. 2011)* …………………...……...… 21,61

*United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989)* …………………….. 21

*Avera v. Airline Pilots Ass'n Intern., 436 Fed.Appx. 969, 974 (11th Cir. 2011)* ... 21

*Eide v. Sarasota Cnty., 908 F.2d 716, 722 (11th Cir. 1990)* ……………………. 21

*Grigsby v. Reynolds Metals Co., 821 F.2d 590 (11th Cir. 1987)* ……………….. 22

*Mercantile Bank & Trust Co, 750 F.2d 838, 842 (11th Circ. 1985)* …………..… 22

*Dethlefs v. Beau Maison Dev. Corp.* , 458 So. 2d 714, 716 (Miss. 1984) .......... 22

*In Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir.) ............................ 25

*United States v. Stein*, 881 F.3d 853, 859 (11th Cir. 2018) ...........…..………... 25

*Maddow v. Procter Gamble Company, Inc.*, 107 F.3d 846 (11th Cir. 1997) ...... 27

*Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308 (11th Cir. 1994) ….....……… 28

*Watson v. Ft. Worth Bank and Trust,*
      487 U.S. 977, 994, 108 S.Ct. 2777, 2788, 101 L.Ed.2d 827, 845 (1988) … 28

*Spivey v. Beverly Enters., Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999) ............. 30

*Martinelli v. Penn Millers Ins. Co.*, 269 F. App'x 226, 230 (3d Cir. 2008) ..…… 31

*Reeves v. DSI Sec. Services, Inc.*, 395 Fed.Appx.544, 547 (11th Cir. 2010) ..…… 31

*Burlington N. & Santa Fe Ry. Co. v. White,*
      548 U.S. 68, 126 S.Ct. 2415, 165 L.Ed.2d 345 (2006) …………………… 31

*West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995) ………….. 32

*Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1321 (11th Cir. 2001) …………... 34

*Mondy v. Crown Zellerbach Corp.*, 271 F. Supp. 258 (E.D.La. 1967) …..……... 34

*Forehand v. Florida State Hosp.*, 89 F.3d 1562, 1570-71 (11th Cir. 1996) ……. 35

*Marie Patterson v. Georgia Pacific, LLC*, No. 20-12733 (11th Cir. 2022) …….. 35

vi

*Gregory v. Ga. Dep't of Hum. Res., 355 F.3d 1277, 1280 (11th Cir. 2004)* ……. 35

*Garcia v. Gloor, 609 F.2d 156 (5th Cir. 1980)* …………………….…..……….. 37

*Hurlbert v. St. Mary's Health Care Sys., Inc.,*
 *439 F.3d 1286, 1299 (11th Cir. 2006)* …………………………………….… 39

*EEOC v. WC&M Enters., 496 F.3d 393, 400-02 (5th Cir. 2007)* ………………. 39

*Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997)* …………………….. 39

*Fernandez v. Trees, 961 F.3d 1148 (11th Cir. 2020)* …………………………... 40

*Johnson v. Booker T. Washington Broad. Serv., Inc.,*
 *234 F.3d 501, 509 (11th Cir. 2000)* ……………………………………… 40

*Smith v. Miami-Dade Cnty., No. 14-12566, 13 (11th Cir. 2015)* ………..……... 43

*Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)* …...…… 31,45

*Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008)* ……………………… 45

*Cf. Mogenhan v. Napolitano, 613 F.3d 1162, 1166-67 (D.C. Cir. 2010)* ………. 46

*Little v. United Technologies, 103 F.3d 956, 960 (11th Cir. 1997)* …………….. 47

*Rollins v. State of Fla. Dept. of Law Enforcement,*
 *868 F.2d 397, 400 (11th Cir. 1989)* ……………………………………… 47

*EEOC v. L.B. Foster Co., 123 F.3d 746, 754 (3d Cir. 1997)* …………….…….. 47

vii

*Ellison v. Brady 924 F.2d 872 (9th Cir. 1991)* ………………………………….. 51

*Hebrew v. TDCJ, No. 22-20517 (5th Cir. 2023)* ………………………………... 52

*Toronka v. Continental Airlines, Inc., 649 F. Supp. 2d 608 (S.D. Tex. 2009)* ….. 53

*Carbone v. Cable News Network, Inc., No. 17-10812 (11th Cir. 2018)* ………... 54

*Adeyeye v. Heartland Sweeteners LLC, 721 F.3d 444, 451 (7th Cir. 2013)* ……. 55

*United States v. Nickl, 427 F.3d 1286, 1298 (10th Cir. 2005)* ………………….. 57

*Perkins, 748 F.2d at 1532 (11th Cir. 1984)* ………………………………………….. 57

*United States v. Nell, 526 F.2d 1223, 1229 (5th Cir. 1976)* ……………………... 57

*Hamm v. Members of B of Regents, 708 F.2d 647, 651 (11th Cir. 1983)* ………. 61

*San Antonio Independent School District v. Rodriguez,*
    *411 U.S. 1, 28, 93 S.Ct. 1278, 1293, 36 L.Ed.2d 16 (1973)* …………….... 56

*Frontiero v. Richardson,*
    *411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973)* ………… 56

*Harris, 510 U.S. at 23, 114 S.Ct. 367* ………………………………………………... 39

*Miller, 277 F.3d at 1277* ……………………………………………………………… 40

*Raytheon Co., 540 U.S. at 52* …………………………………………...……. 43

*Groff v. DeJoy, 600 U.S. 447 (2023)* …………………………….……………… 44

*Abercrombie, 575 U.S. at 773-774, 135 S.Ct. 2028* …………………………….. 52

**Statues**

Title VII of the Civil Rights Act of 1964 …………………………………... *passim*

42 U.S. Code § 2000e - § 2000e–17 …………………………………….. *passim*

28 U.S. Code § 455 ……………………………………………………. 4

28 U.S. Code § 1654 ……………………………………………….. 58

Ala. Code (1975) § 15-1-3 ……………………………………………… 60

**Regulations**

29 CFR § 1606.6 ………………………………………………………… 1,37

29 CFR § 1606.8 ………………………………….…………………….. *passim*

29 CFR § 1605.1 ……………………………………..…………… 53,55

29 CFR § 1605.2 ……………………………….…………………….. *passim*

29 C.F.R. § 1601.12 …………………………………………..……… 34

**Rules**

Fed. R. Civ. P. Rule 8 ………………………………………..……… 54

Fed. R. Civ. P. Rule 12 …………………………………………….. 54

Fed. R. Civ. P. Rule 56 …………………………………………..………. *passim*

Fed. R. Civ. P. Rule 59 ………………………………………………….... 7

Fed. R. Civ. P. Rule 60 …………………………………………………… 7

Fed. R. Evid. 604 ……………………………………………...………… 60

## Constitution citation

U.S. Constitution, 14th Amendment ………………………….…….. *passim*

## Other Authorities

EEOC Enforcement Guidance on National Origin Discrimination,
11-18-2016, OLC Control Number EEOC-CVG-2016-2 …………………… 36,38

The People's Law Dictionary by Gerald and Kathleen Hill ………………… 57,58

Merriam-Webster.com Legal Dictionary …………………..…………………… 49

Shoenfelt, Elizabeth L., et al. "Reasonable Person versus
Reasonable Woman: Does It Matter?" American University Journal of
Gender Social Policy and Law 10, no. 3 (2002): 633-672 …………..………. 51

Alabama's Unified Judicial System Policies and Procedures
for Foreign Language Interpreters" of 2008 ………………………………… 56,59

## Jurisdictional Statement

**I.** District Court's Jurisdiction.

1. District Court had jurisdiction of the action under 42 U.S.C. § 2000e-5(f) and 28 U.S. Code § 1331. Venue was proper in the judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(2) because it is where substantial part of the events or omissions giving rise to the cause of action herein occurred.

2. The Equal Employment Opportunity Commission ("EEOC") received a timely charge (EEOC Charge No. 425-2022-01008) filed by Elena Mukhina on or about 06/08/2022. (Doc 35-1 - Pg 26)

3. The official notice from the EEOC of the dismissal of charge and a right to sue was issued on 06/16/2022. (Doc 19)

4. All conditions precedent to the filing of the suit have been performed or have occurred.

**II.** Court of Appeals Jurisdiction.

1. This Court has a jurisdiction of the action for the Appeal under 42 U.S. Code § 2000e–5(j) as it refers to the general jurisdiction of the Court of Appeal from final decisions of the District Courts in accordance with 28 U.S. Code § 1291. Appellant is appealing the final Judgment (Doc 53).

2. The United States Court of Appeals for the Eleventh Judicial Circuit has jurisdiction over federal cases originating in the states of Alabama, Florida and Georgia. Appellant is appealing the final Judgment from a federal case from Alabama Southern District Court.

**III.**    Timeliness of Appeal.

1. The final Judgment was entered by Chief District Judge Jeffrey U. Beaverstock on 01/03/2024. (Doc 53)

2. On 01/18/2024 Elena Mukhina filed timely Motion to Alter, Amend or Vacate the Judgment or for Relief from Judgment (Doc. 58) in accordance with Fed. R. Civ. P. Rules 59 and 60. According to Fed. R. App. P. Rule 4 (a)(4), such motion paused the running of the time for filing an Appeal until the Motion is decided.

3. On 04/19/2024 Chief District Judge Jeffrey U. Beaverstock entered the order denying Motion (Doc 62), and within the time required by Fed. R. App. P. Rule 4 (a)(1), Elena Mukhina filed the Notice of Appeal on 05/16/2024 (Doc. 64).

Therefore, this Appeal is timeliness in accordance with FRAP and sought from a final Judgment of the District Court.

**Statement of the Issues**

**I.**    Whether the District Court erred in Granting Defendant's Motion for

Summary Judgment under Fed. R. Civ. P. Rule 56.

1. Whether the District Court erred in application of defined standard of

review for Motion for Summary Judgment.

2.    Whether the Defendant's Motion for Summary Judgment satisfied the

movant's initial burden.

3.    Whether the Plaintiff proved pretext opposing the Defendant's Motion

under *Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913 (11th Cir. 1994).*

**II.** Whether the Plaintiff established genuine issues for her claims under Fed. R.

Civ. P. Rule 56:

National origin discrimination claim.

4.    Whether the Plaintiff proved that requirement of the English fluency

for her is a discriminatory practice under Title VII based on National Origin

protected characteristic under 42 U.S. Code § 2000e–2 (a)(1) in accordance with

29 CFR § 1606.6 (b)(1).

5.    Whether the Plaintiff proved the alleged harassment was based on her

protected characteristic under 29 CFR § 1606.8.

1

6.      Whether the Plaintiff provided enough evidence in accordance with *Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1248–49 (11th Cir. 2014)* to prove severity of the harassment for hostile working environment claim under 29 CFR § 1606.8 (b)(1).

7.      Whether the Plaintiff provided enough evidence to prove Defendant's vicarious liability for harassment under 29 CFR § 1606.8 (e).

8.      Whether the Plaintiff had to be able to pronounce exact phrases of abusers to get necessary evidence for the claim under Title VII, despite the fact of not speaking on abuser's language and still being entitled to equal protection from the law under U.S. Const., 14th Amend.

9.      Whether the "reasonable person" standard and "objectivity of the harm" application by the District Court to decide Hostile working environment under 29 CFR § 1606.8 (b)(1) is constitutional and conforms with the right to equal protection from the law under U.S. Const., 14th Amend.

10.      Whether the District Court made an error of law in its analysis of Constructive Discharge under the National Origin Discrimination Claim. (Doc 52 - Pg 14-16)

Religious discrimination claim.

11.     Whether the Plaintiff exhausted her administrative duties with EEOC under 42 U.S. Code § 2000e–5 to present the claim for religious discrimination in accordance with Title VII 42 U.S. Code § 2000e–2.

12.     Whether the District Court made an error of the law by using inappropriate standard for reviewing Plaintiff's disparate impact religious accommodation discrimination claim. (Doc 52 - Pg 19).

13.     Whether Plaintiff satisfied notification requirement for religious accommodation claim under 29 CFR § 1605.2 (c).

14.     Whether the Plaintiff provided enough evidence in accordance with 42 U.S. Code § 2000e–2 (k) to prove disparate impact in connection to alleged religious discrimination claim.

Retaliation claim.

15.     Whether the District Court erred in consideration of facts of the record for Plaintiff's retaliation claim under 42 U.S. Code § 2000e–3 (a).

16.     Whether the District Court erred in missing the standard of "retaliatory harassment" for reviewing the facts on the record in accordance with *Swindle v. Jefferson Cnty. Comm'n, 593 F. App'x 919 (11th Cir. 2014)*.

17.    Whether the District Court erred by omitting the review of constructive discharge for Plaintiff's retaliation claim as an adverse action under *Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010)*.

18.    Whether the Plaintiff's constructive discharge satisfied the "adverse material employment action" under *id*.

19.    Whether the Plaintiff provided enough evidence in accordance with *id.* to prove casual connection between materially adverse actions and protected activity for retaliation claim under 42 U.S. Code § 2000e–3 (a).

**III.**    Whether the District Court was biased to the Plaintiff during the lawsuit procedure and in making any decision on the case despite the Plaintiff has Constitutional due process right for and Impartial Decision Maker under U.S. Const., 14th Amend.

20. Whether assigned Judges need to be recused from the case due to bias in accordance with 28 U.S. Code § 455 (b)(1).

**Statement of the Case**

Plaintiff, Elena Mukhina, was employed with Walmart. Inc, the Defendant, and alleged to experience employment discrimination. Prior to initiating the lawsuit, Plaintiff contacted EEOC on 04/21/2022 and on 06/08/2022 the Charge of Discrimination was issued. On 06/16/2022 the Right to Sue Letter was issued.

On 09/12/22 the Plaintiff submitted the Complaint to the Southern District Court of Alabama alleging Employment Discrimination on three Counts:

I. National origin discrimination in violation of Title VII of the Civil Rights Act of 1964 (alleging harassment through the hostile working environment, harassment by non-employees, discrimination in admission to job training program, discriminative English-only Rule application);

II. Discrimination on the basis of religious beliefs in violation of Title VII of the Civil Rights Act of 1964 (alleging refusal of reasonable accommodation for religious practice under Disparate Impact);

III. Retaliation based on engagement in protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000e-3(a) (alleging adverse action in form of constructive discharge as well as in outlined sequence many offensive acts from Defendant's employees after taking the part in protected activity).

The litigation started and after the termination of the Discovery stage, on 09/29/23, Defendant filed the Motion for Summary Judgment (Doc 31) contending absence of genuine issue of material fact, and entitlement to judgment as a matter of law on all three counts. (Doc 33) The Motion's main arguments stating that:

1. "Plaintiff Offers No Evidence of National Origin Discrimination" due to English language fluency is a required qualification for Plaintiff's job; due to the working environment being not abusive enough and due to the constructive discharge being rather voluntary;

2. "Plaintiff Cannot State a Claim for Religious Discrimination" due to failure to exhaust administrative remedies with EEOC, and due to Plaintiff's failure to identify the request for accommodation as "religious";

3. "Plaintiff Offers No Evidence of Retaliation" due to the absence of a material adverse action for Plaintiff's protected activity.

Plaintiff timely submitted her opposition to the Motion in a form of Affidavit (Doc 35-1 - Pg 1-9), objecting Defendant's facts and exhibits, Memorandum (Doc 35), where she proved the contrary to Defendant's arguments with proper law citation, and Exhibits (Doc 35-1 - Pg 10-46 together with conventional exhibits) in support of Plaintiff's position confirming presence of genuine issues for the case.

However, on 01/03/24 District Court issued the Judgment (Doc 53) and Granted Defendant's Motion, providing Memorandum in support (Doc 52). Honorable Judge Jeffrey U. Beaverstock was relying on the same arguments presented by Defendant, claiming factual and evidential insufficiency together with failure to exhaust claim for religious discrimination.

Plaintiff made a last try in a lower Court to get a remedy from the Judgment by filing the Motion under Rules 59 and 60 (Doc 58), pointing out errors of law, of fact, providing newly discovered evidence and other.

Plaintiff's Motion was Denied by the District Court (Doc 62) and Plaintiff filed the Notice of Appeal (Doc 64).

## Statement of facts.

### I. Facts related to National origin discrimination claim.

Plaintiff, Elena Mukhina, was born on 09/08/1969 in Russia and lived there for 47 years. Her native language is Russian. Elena was forced to leave her home country due to persecution together with her daughter Anastasiia Mukhina and they were granted Asylum status in the USA. Right now, Elena and her daughter are US Citizens by naturalization. In Russia Elena had experience working as a salesperson in retail stores and managed her own online store of jewelry and accessories for women. (Doc 2 - Pg 4) Elena is not able to speak English and may

7

say only separate words on English with an accent. (Doc 35-1 - Pg 8) (Doc 2 - Pg 4,5)

Defendant, Walmart company, has established the "Common Language Policy" which describes exact procedures to comply with when employees who are not able to speak English dealing with customers or members of management. (Doc 35-1 - Pg 10-12)

From 03/2019 to 07/2019 Elena was employed with Walmart Store in Federal Way, WA as an Apparel Department Associate and was successfully completing her job assignments. (Doc 2 - Pg 5,7).

Shortly after moving to Alabama, Elena started to search for a job. After passing the entry test, Elena started to work at Walmart store in Daphne, AL on 27/09/21. (Doc 2 - Pg 9).

Job description for Elena's position stated the "English proficiency" as "Preferred Qualification", but not "Required". (Doc 32-3 - Pg 8)

Already on the next day of employment, coworkers were discussing Elena questioning her ability to work without English. A few days later, associates in the breakroom were pointing finger to Elena questioning her place of origin. (Doc 2 - Pg 10)

Customers approached Elena often with a lot of questions and upon discovering she does not speak English, some apologized, some were surprised, and some expressed their dissatisfaction. Customers who were seriously angry shouted offensive words to Elena, calling her stupid and were offering her to leave back to her home country. Such reaction Elena experienced once or twice a day every day. Customers explained to Elena why people like her without English should not work at the retail store and why she must speak English; teen age customers laughed at Elena's accent, humiliated at her by making a mess around in the department and laughed; others became furious and yelled at Elena trying to repeat English words for her better understanding; customers yelled "Talk to me in English! Or go back to your Moscow!" (Doc 2 - Pg 11,12) After 2 weeks of working experiencing aggression from customers, Elena was afraid of them, tried to hide somewhere deeper in the department and work there. (Doc 2 - Pg 13)

Despite the fact that Elena doesn't speak English, front end managers ordered Elena to work at the front door as a hostess - to greet customers, answer questions, check purchase receipts. Some employees laughed at Elena when she did not understand them and talked to her as if she was intellectually disabled or shouted as if she was deaf. Job related instruction was handed out to Elena by both team leaders and ordinary associates, her completed job assignments were under special supervision from coworkers and managers. Most of Elena's co-workers

9

didn't try to speak slowly and were showing obvious discontent and sighing heavily while using cellphone translator app. When Elena used Russian words while communicating with associates, they asked her to speak English and were clearly annoyed. (Doc 2 - Pg 13,14)

Elena successfully worked organizing new merchandise on shelves, sorted out returns, zoned in the clothing department. She could set up displays, check and change price tags. She did all the work related to the merchandise very well, problems only appeared during communication with customers. (Doc 2 - Pg 13) Manager Carmen said: "Elena was a great worker and hated to lose her". (Doc 32-3 - Pg 61)

On 10/20/2021 customer in a jewelry department was so angry about Elena's inability to understand English, that shouted at her, waved his hands in front of her face, Elena thought he could hit her. Then this customer slandered Elena to another associate. (Doc 2 - Pg 14-15)

On 10/20/21 Elena together with her daughter as an interpreter came to manager Donald Bayard and told about how customers being rude to her, yelling at her, wanting to make a complaint for her because of the inability to speak English and all this happens every day. Donald stated that only way to control customer interaction would be Elena's transfer to the overnight shift and promised to take

action within two weeks - to speak with overnight manager and to find replacement for Elena's position, despite of being short staffed due to COVID. (Doc 35-1 - Pg 13-15) (Conventionally filed Exhibit 4)

Elena was forbidden to use shopping carts for work, but other associates could use them. Elena was never called by name over the air radio, while other associates were called by name. (Doc 2 - Pg 17)

While waiting for action from management, Elena still experienced abuse from customers. (Doc 2 - Pg 16) It led to her being terribly afraid of people, even outside of work. (Doc 2 - Pg 18) Moreover, she physically started to experience increased muscle tone and developed spasms of the limbs - the disease returned from which Elena was cured in Washington state before. (Doc 2 - Pg 19)

Right now, Elena is still suffering from panic attacks while interacting with people. She is getting treatment for diagnosed OCD, depression, anxiety and panic attacks with psychiatrist by taking necessary medication, and by therapy. (Doc 58 - Pg 21,22)

At the end of November, Elena asked her daughter to let team leader Stephanie know about abusive behavior from customers to Elena, because Stephanie made her complete the register training to work with customers in jewelry department of Apparel section of the store. (Doc 2 - Pg 19)

11

On 12/02/21, 6 weeks past the first conversation with manager Donald, Elena and her daughter approached him again. He asked: "Does she still want to go overnight?" Donald let Elena know that he is transferring to the other department and her new manager will be Susan. (Doc 35-1 - Pg 17-20) (Conv. Filed Exhibit 6) He promised to speak with Store Manager tomorrow, but "tomorrow" was his day off. (Doc 2 - Pg 20)

On 12/04/21 Elena and her daughter approached her new supervisor, Susan. She found out that Donald never contacted the night shift manager about Elena's transfer. Susan promised to transfer Elena within 24 hours. (Doc 43 - Pg 15-18) (Conv. Filed Exhibit 8) Next day Elena was transferred to work on the night schedule. (Doc 2 - Pg 20)

It became much calmer to work on the night shift - Elena saw the customers only 2 hours per shift. For all the time she worked at night (more than three months), there were only two dissatisfied customers. However, Elena still met with associate offensive behavior. (Doc 2 - Pg 21,22)

On 12/23/21 Elena's daughter Anastasiia, on behalf of Elena, filed a complaint with the Walmart Ethics Department over the phone and described offensive behavior and abuse from customers and associates about Elena's inability to speak English alleging National Origin discrimination. (Doc 2 - Pg 25)

On 01/05/22 Ethic requested additional information about allegations. (Doc 32-3 - Pg 43) On 01/06/22 additional information was provided. (Doc 32-3 - Pg 42) Walmart Ethic Department concluded that National Origin Discrimination claim is "Unsubstantiated". (Doc 32-3 - Pg 35)

In January, Elena's spasms of the limbs again intensified. After one such spasm, around 01/20/22, there was an injury: a pinched nerve on the right leg and as a result - a "drop foot", led to limping and falling. (Doc 2 - Pg - 27) About a month after Elena discharged from Walmart, her leg fully recovered without any treatment. (Doc - 2 - Pg 30) Elena is currently self-employed managing her own resale business. (Doc 2 - Pg 31)

During the interview with EEOC on 06/07/2022, representative said that because Elena does not speak English and cannot exactly pronounce what customers or associates told her, it is impossible for them to investigate the allegations of national origin discrimination due to lack of evidence.

## II. Facts related to religious discrimination claim.

Elena is an adherent of Russian Folk Christianity religion, which is specific to a Russia as a country and its population. New Year and a New Year's Eve are religious holidays for Elena. Those connected to certain traditions, rituals and symbols, determine the future fate, and are necessary to follow in order to hope for

13

the best in the future. As soon as Elena found out that she scheduled to work on 12/31/21 at the night shift, she made a request for unpaid time off via Walmart application to be able to practice her religion. (Doc 2 - Pg 23,24)

On 12/17/21 Manager Crystal Croll rejected Elena's request for unpaid time off, without knowing the reason of that request via the app. (Doc 35-1 - Pg 44)

On 12/18/21 Elena together with her daughter approached manager Crystal and explained the importance of requested holiday, comparing it to Christmas, saying: "It's a main holiday in the year, in the life", several times asking to adjust the schedule, to work in other days instead. Crystal stated: "Because its technically a holiday, 1 am not approving any days off at this day", explaining that it's fair for everyone. (Doc 43 - Pg 20-24)

During the discovery stage of the litigation, it turns out, that Walmart approves unpaid time off requests on the "First come / first served" basis. (Doc 32-3 - Pg 35)

Sometime around December 20th, an associate of a day shift at Apparel department Kay, told Elena that Kay's manager had approved her request for 4 days off to celebrate Christmas with relatives in another state. (Doc 2 - Pg 25)

On 12/23/21 Elena's daughter Anastasiia, on behalf of Elena, filed a complaint with the Walmart Ethics Department over the phone alleging manager

14

Crystal Croll discriminated against Elena due to a request for religious accommodation. (Doc 32-3 - Pg 53)

Ethic Complaint was not resolved by requested day off date, as a result, Elena completed her religious practice and received 2 penalty points for missing shift, which were never removed. (Doc 35-1 - Pg 43) Walmart Ethic's Department investigation concluded that no discrimination occurred against Elena. (Doc 32-3 - Pg 35)

Accumulation of penalty points leads to termination under Walmart Attendance and Punctuality Policy. (Doc 32-3 - Pg 26)

On 4/21/2022, while filling out the initial EEOC questionnaire, Elena stated events regarding requested day off and its denial by Crystall Croll. (Doc 35-1 - Pg 25) However, during the interview with EEOC representative on 06/07/2022, turned out that events of alleged religious discrimination already don't fit to the 180 days deadline. Elena was misled by EEOC scheduling representative when choosing date for an interview, the lady stated: "You can choose any date". As a result, EEOC charge only reflects National Origin discrimination allegations. (Doc 35-1 - Pg 26)

**III. Facts related to Retaliation claim.**

To prevent, avoid, and to fight discriminating abusive behavior against Elena in the store, she complained about it to manager Donald (Doc 35-1 - Pg 13-15) (Conventionally filed Exhibit 4), to manager Stephanie (Doc 2 - Pg 19), to manager Susan (Doc 43 - Pg 15-18) (Conventionally filed Exhibit 8). Elena opposed job assignments, reasonably believed them to lead to abuse from customers of the store. (Doc 2 - Pg 13) Elena filed a formal complaint to Walmart Ethic Department to resolve alleged discrimination about religious accommodation request and to report alleged national origin discrimination harassment. (Doc 2 - Pg 25)

In response to Elena's transfer to the night shift, manager Erika reproached her for "wanting extra dollar". (Doc 32-2 - PageID 239, Page 45,46) When Elena refused job assignments, managers got angry, called by the radio to one of the supervisors and complained about her, defiantly turning away from Elena upon meeting her on the way. (Doc 2 - Pg 13) After Elena filed the formal complaint with Walmart Ethic Department, she noticed undue attention to her from different associates as well as change of attitude to her. (Doc 2 - Pg 26)

Under Walmart Global Discrimination & Harassment Prevention Policy, Confidentiality headline, information about investigation report should be

disclosed only to "those having a need to know" about the investigation. (Doc 32-3 - Pg 15)

During Elena's interview with Walmart Ethic Department, Investigator discussed her with a grin with interpreter, because she asked to change Interpreters twice. (Doc 2 - Pg 26,27)

While working night shift with manager Crystal in charge, Elena had to bring freight from the backroom by herself. (Doc 2 - Pg 26) Manager Stephanie also forced Elena to bring freight. (Doc 2 - Pg 28) While other workers received at least part of the load at the beginning of the night shift. (Doc 2 - Pg 22) This freight was brought in advance by backroom employees, and as manager Sarah said, Elena never needed to bring freight by herself. (Doc 2 - Pg 28)

On the night shift among other employees of Apparel Department, Elena was the only one who was given a task to sort out returns. Day shift manager Stephanie made Elena to work on the backroom, while she didn't make other night shift associates to do that. After transfer, many employees looked at her with condemnation, discussing her standing right nearby and were unwelcome. (Doc 2 - Pg 21)

On 03/20/22 one of Walmart associates approached Elena and after realizing she doesn't speak English begun to say something with anger. Elena understood

17

only "Russia", "Ukraine", "invasion" and "fuck you". Elena decided to quit, because abusive behavior is never going to end, and asking for help will lead to more condemnation from associates of the store. Elena was officially terminated on 04/04/22. (Doc 2 - Pg 30)

**IV. Facts related to alleged Judicial Bias.**

On 11/30/2022 the Scheduling Conference was held with assigned to the case Honorable Judge William E. Cassady, Jonathan S. Harbuck, counsel for Defendant, Elena Mukhina and her daughter Anastasiia Mukhina as an interpreter.

Judge questioned Elena about: how is she going to comply with her burden to prove the case in front of the decision-maker if she doesn't speak English? How does she plan to question a witness that speaks only English and introduce evidence? When Elena mentioned the use of interpreter, the Judge made a comment to that fact as "Interesting" and stated, that "Most of the time, the presentation of evidence is not done through an interpreter". Elena immediately asked whether she can even come to the Court if she doesn't speak English. The Judge responded that he is only questioning what Elena's plan is. (Doc 54 Transcript - Pg 3,4)

Later during the conference, the Judge again brought back the fact that Elena doesn't speak English and was wondering if counsel for Defendant ever

experienced a trial where the Plaintiff is not English speaker and used the service of interpreter. The Judge told a story about one plaintiff he had with stuttering problem and added: "But I have not had the experience of a pro se, which means plaintiff without a lawyer, try to present his or her case when she could not speak the English language." The Judge then concluded that presentation of a case for Elena - "that's just one of the problems", as another problem, he described the trial process for Elena and included into that problem: communication through a microphone system, and making Elena to understand of what saying witnesses, lawyer and a Judge. (Doc 54 Transcript - Pg 20,21)

On 12/13/2023 the Motion Hearing was held with Honorable Judge Jeffrey U. Beaverstock, Jonathan S. Harbuck, counsel for Defendant, Elena Mukhina and Noune Oganessian as an interpreter.

According to the "Interpreter Rosters & Registries" of the District Court for Southern District of California, Noune Oganessian is Certified Interpreter by the state of California for Eastern Armenian and Russian languages. Elena noticed her heavily Armenian accent during the hearing interpretation. It is possible to conclude, that Russian is not Noune's native language. While speaking with Elena on Russian, Noune used a lot of unnecessary junk words and spoke unclear. Elena objected to the interpreter during her post judgment Motion. (Doc 58 - Pg 17,18)

Before the hearing started, interpreter tried to set up the headset for Elena. Courtroom Deputy Ms. Melanie Paulk made a comment during the set up: "Why do we hear Russian speech". The headset had to be changed during the hearing for technical issues. (Doc 70 Transcript - Pg 2)

The interpreter never gave an oath or affirmation to make a true translation at any time of the hearing.

During the hearing, the interpreter was often inaudible, or too loud. (Doc 70 Transcript - Pg 2,3) Noune misspoke Elena's speech, and Judge told the interpreter about troubles hearing her (Doc 70 Transcript- Pg 10). Defendant's Counsel stated difficulties understanding the translation. (Doc 70 Transcript- Pg 14)

## Standard of review.

As per *Johnson v. Booker T. Wash. Broad. Serv, 234 F.3d 501, 507 (11th Cir. 2000),* "We review de novo the district court's grant of summary judgment, applying the same legal standards as the district court, and viewing all facts and reasonable inferences drawn therefrom in the light most favorable to Johnson, the non-moving party. See *Evans v. McClain of Georgia, Inc., 131 F.3d 957, 961 (11th Cir. 1997) (per curiam)*". However, Plaintiff in the current brief claims that the District Court erroneously applied defined standard by making Plaintiff to prove the merits instead of establishing genuine issues; omitted or misplaced some legal

standards in reviewing facts and evidence; weighted evidence and made conclusions of law. The foregoing can be considered an abuse of discretion.

In A*la. Educ. Ass'n v. Bentley (In re Hubbard), 803 F.3d 1298 (11th Cir. 2015)*, "*FTC v. Nat'l Urological Grp., Inc., 785 F.3d 477, 481 (11th Cir.2015)* (explaining that a district court abuses its discretion when it "applies an incorrect legal standard, [or] applies the law in an unreasonable or incorrect manner") (quotation marks omitted)".

In finding Judicial Bias and in deciding on recusal, this Court uses the abuse of discretion standard. In *Anderson v. Vanguard Car Rental USA Inc., 427 F. App'x 861, 863 (11th Cir. 2011)*, "We review a district judge's decision as to whether to recuse himself for an abuse of discretion. *United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989)*. … Section 455(a) instructs a federal judge to disqualify himself if "his impartiality might be reasonably questioned".

Plaintiff also presents issues concerning the constitutionality of federal laws, and this Court uses strict scrutiny standard for such. "If a law treats individuals differently on the basis of race or another suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny." *Avera v. Airline Pilots Ass'n Intern., 436 Fed.Appx. 969, 974 (11th Cir. 2011) (citing Eide v. Sarasota Cnty., 908 F.2d 716, 722 (11th Cir. 1990))*.

21

## Summary of the Argument

Appellant, being pro se, hereby appeals the Granting of the Summary Judgment Motion for Defendant against the Plaintiff in the Lower District Court in Employment Discrimination case.

In *Grigsby v. Reynolds Metals Co., 821 F.2d 590 (11th Cir. 1987),* the Court stated that "[i]n general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent." According to *Mercantile Bank & Trust Co, 750 F.2d 838, 842 (11th Circ. 1985),* "As summary judgment is a drastic remedy, it should not be granted unless movant establishes that the other party is not entitled to recover under <u>any</u> discernable circumstances." According to *Dethlefs v. Beau Maison Dev. Corp. , 458 So. 2d 714, 716 (Miss. 1984),* "Summary judgment is not to be used as a means of depriving a litigant of a full trial on genuine fact issues."

Appellant believes that the record has sufficient facts and evidence to establish genuine issues for trial; that Granting of the Motion was erroneous due to wrongful application of the legal standards for its review by the Honorable Judge; that Judges assigned to the case initially were biased to the Plaintiff and assured in her inability to prevail in the case due to lack of English language knowledge per her foreign origin, and not due to any evidentiary or factual insufficiency.

Appellant further claims her entitlement for an equal protection of the law according to the US Constitution 14th Amendment. And believes that she proved her right for a fair Trial and for an Impartial Judge.

The following Argument section addresses the presented above Statement of Issues, relies on listed above Statement of facts and on the Record.

# Argument

## I. The District Court erred in reviewing the Motion for Summary Judgment by not conforming with the defined Standard of Review.

District Court correctly identified the standard for reviewing the Motion for Summary Judgment. (Doc 52 - Pg 6,7) However, erred in application of that standard in its following analysis. The Honorable Judge is weighing evidence (Doc 52 - Pg 18 footnotes), making conclusions of the law (Doc 52 - Pg 16), placing the burden of proof to the Plaintiff for each claim (Doc 52 - Pg 21), while all this should be satisfied at Trial, and not on the Summary Judgment Motion.

### 1. Erroneous omission of consideration of Initial burden for Movant in the Motion review.

As the movant, Defendant first had to satisfy its initial burden under Rule 56(c) for the burden thereafter to be shifted to the Plaintiff. Rule 56(c)(1) requires proper citation for material facts that show absence of a genuine dispute. Plaintiff in her opposition in form of Affidavit (Doc 35-1 - Pg 1-7) disputed 16 of 28 offered by Defendant facts, where 10 for the reason of missing citation and the remaining for partial presentation and misleading assumption. Plaintiff clearly stated her objection on the record. (Doc 35-1 - Pg 7) Facts that were undisputed are whether neutral or may be used in support of Plaintiff's position as well, and do not

constitute any absence of genuine issue, but otherwise may prove its existence. In the Reply, Defendant even claimed that Elena <u>does</u> speak English, which is completely wrong and misleading. (Doc 38 - Pg 1(I)(¶17) (Doc 58 - Pg 3)

Where the dispute to offered by movant's "undisputed" facts arises, the Motion for Summary Judgment should not be granted. *In Price v. Time, Inc., 416 F.3d 1327, 1345 (11th Cir.)*, "Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving." The Eleventh Circuit has held that "the self-serving and/or uncorroborated nature of an affidavit cannot prevent it from creating an issue of material fact" precluding summary judgment, in *United States v. Stein, 881 F.3d 853, 859 (11th Cir. 2018)*. Plaintiff also supported her opposition with 17 exhibits. (Doc 35-1 Pg 10-46 and conventionally filed exhibits) That way Plaintiff proved that motion should be denied in accordance with Summary Judgment Standard.

The District Court erred by not including in its analysis the facts of Plaintiff's disputes. Nowhere in the Memorandum (Doc 52) did the Honorable Judge evaluate Defendant's Motion for its satisfaction to Rule 56 initial burden.

## 2. Erroneous application of additionally asserted Standards for reviewing Title VII claims.

The District Court asserted additional standards for the review of Title VII claims. (Doc 52 - Pg 7-8; 9; 10; 14-15; 19; 20) While it is helpful for evaluating sufficiency of evidence and facts for genuine issues determination purposes, the Court erred in making Plaintiff to satisfy these standards as a burden of proof, and not the Summary Judgment standard. (Doc 52 - Pg 10 "there are insufficient facts to establish the remaining elements of her claim"; Pg 16 "…Plaintiff has not shown that she was subjected to a hostile work environment"; Pg 20 "Plaintiff has not established a connection between her religion and the alleged discrimination"; Pg 21 "Plaintiff cannot establish an adverse employment action occurred as a result of her engaging in a protected activity" etc.)

Conclusions of the law, that the Honorable Judge made in its analysis - is a clear error in violation of the Summary Judgment Standard of review, where "The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." (Doc 52 - Pg 6,7)

### 3. Erroneous placement of the burden of proof for each claim on Plaintiff, instead of defining the genuine issue for Trial.

According to *Maddow v. Procter Gamble Company, Inc., 107 F.3d 846 (11th Cir. 1997)*, "Because this is a summary judgment motion, the plaintiffs need only raise a genuine issue of material fact that the reason was a pretext; they do not need to actually prove it", per *Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913 (11th Cir. 1994)*.

Again, the District Court erred in analyzing Summary Judgment Motion, trying to hold Plaintiff to actually prove pretext for each Plaintiff's claims in the Complaint. (Doc 52 - Pg 10). While Plaintiff needs only to put the pretext in issue and establish the existence of each essential element of the case, for which then will bear the burden of proof at trial.

Plaintiff conformed with the standard by presenting facts and evidence that are not so one sided and that rise genuine issue for trial:

a) For the national origin discrimination, Plaintiff defined as a genuine issue in contrary to Defendant's argument the following - requirement of the fluency in English for the Plaintiff's job is a Discrimination on the basis of National Origin. (Doc 35 - Pg 6-9) Following from that issue, Plaintiff established claims with its

27

elements for trial: hostile working environment due harassment (Doc 35 - Pg 10-12) with defendant's vicarious liability under 29 CFR § 1606.8 (Doc 35 - Pg 12).

b) For the religious discrimination, Plaintiff defined as a genuine issue in contrary to Defendant's argument the following - denying the requested day off for Plaintiff by her manager is a Discrimination on the basis of Religion. (Doc 35 - Pg 13) Following from that issue, Plaintiff established claims with its elements for trial: refusal of reasonable accommodation under disparate impact theory per 29 CFR § 1605.2 and 42 U.S. Code § 2000e–2(k)(1)(A). Plaintiff claimed the disparate impact theory from the very beginning in her Complaint (Doc 2 - Pg 40).

On this issue, Defendant didn't offer facts or arguments, because misplaced the legal standard for disparate treatment instead of disparate impact (Doc 33 - Pg 13). Plaintiff didn't plead disparate treatment and therefore Defendant's arguments irrelevant and could not be reviewed against Plaintiff on the Motion. Despite Defendant's mistake, Plaintiff asserted the correct claim. And for this one, the pretext not even needed to be proved. As per *Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308 (11th Cir. 1994)*, "disparate impact may succeed without any evidence whatsoever of intentional discrimination", "To establish a prima facie case of disparate impact, a plaintiff must first identify the specific employment practice that allegedly has a disproportionate impact. *Watson v. Ft. Worth Bank and Trust, 487 U.S. 977, 994, 108 S.Ct. 2777, 2788, 101 L.Ed.2d 827, 845 (1988)*".

28

c) For the retaliation, Plaintiff defined as a genuine issue in contrary to Defendant's argument the following - Plaintiff's active participation in protected activity opposing discrimination led to Retaliation. (Doc 35 - Pg 18) Following from that issue, Plaintiff established claims with its elements for trial: retaliation covered by 42 U.S. Code § 2000e–3.

Plaintiff's participation in protected activity is undisputed (Doc 52 - Pg 21). As Honorable Judge stated in its analysis: "Last two elements of Plaintiff's prima facie case are at issue", (about adverse material action and casual connection for retaliation claim). (Doc 52 - Pg 21) And those issues the trier of fact will need to resolve during the Trial.

All the foregoing issues were supported with proper citation to the law, to facts and to evidence (from Plaintiff's and Defendant's side) on the record, necessary to demonstrate genuine issue and to make arguments in contrary to offered arguments by Defendant. Plaintiff did not make a "trial on papers" and did not prove her claims, but only conformed with Summary Judgment Motion Standard and demonstrated genuine issues.

Moreover, before the District Court made a decision on a Motion, Plaintiff filed with the Court pretrial disclosures such as Witness List (Doc 46) and Exhibit List (Doc 47). The last amounts to about 88 documents.

**II. The District Court erred in misplacing, omitting or confusing Plaintiff's claims standards of review for evaluating sufficiency of facts and evidence.**

**a)** The District Court erred in reviewing alleged Religious Discrimination claim as Disparate Treatment instead of the Disparate Impact. (Doc 52 - Pg 19) Plaintiff clearly stated in her Memorandum, that her manager's decision to deny the request for day-off was a Disparate Impact according to 42 U.S. Code § 2000e–2(k)(1)(A) due to facially-neutral policy of approving unpaid time off (Doc 35 - Pg 13), and also initially stated it in her Complaint (Doc 2 - Pg 40 "Elena alleges Defendant to be involved in unlawful employment practice such as a disparate impact ...") Such misplaced standards (Pg 28)[1] led to wrongful evaluating of facts and evidence for a Motion for Summary Judgment.

"There are two types of discrimination actionable under Title VII, disparate treatment and disparate impact." *Spivey v. Beverly Enters., Inc., 196 F.3d 1309, 1312 (11th Cir. 1999).*

**b)** The District Court erred in omitting the consideration of "retaliatory harassment" standard (Doc 52 - Pg 21), even though Plaintiff stated it in her Memorandum with proper citation to the law (Doc 35 - Pg 21). Instead, the Honorable Judge separately reviewed some (not all) actions claimed by Plaintiff,

---

[1] Reference to pages in the current document.

such as each of them constitute adverse action. (Doc 52 - Pg 21 "Plaintiff also references specific events she contends are adverse actions.")

For Retaliation claim purposes, according to *Swindle v. Jefferson Cnty. Comm'n, 593 F. App'x 919 (11th Cir. 2014)*, "A Plaintiff establishes a prima facie case of retaliatory harassment only if she shows that (1) she engaged in protected activity; (2) after doing so, she was subjected to unwelcome harassment; (3) her protected activity was a "but for" cause of the harassment; (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of her employment; and (5) a basis exists for holding her employer liable either directly or vicariously."

In Memorandum (Doc 35 - Pg 21), Plaintiff also citing *Martinelli v. Penn Millers Ins. Co., 269 F. App'x 226, 230 (3d Cir. 2008)*, where after Burlington Northern, an employee claiming "retaliation by workplace harassment" is "no longer required to show that the harassment was severe or pervasive").

Therefore, facts and evidence of "retaliatory harassment" had to be hold to a standard, and reviewed thereafter as an adverse action per *Reeves v. DSI Sec. Services, Inc., 395 Fed.Appx.544, 547 (11th Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 68, 126 S.Ct. 2415, 165 L.Ed.2d 345 (2006))*, as a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

31

**c)** The District Court erred in reviewing Constructive Discharge under National Origin Discrimination claim's facts and evidence in its analysis. (Doc 52 - Pg 14-16) Plaintiff clearly stated in her Memorandum, that Constructive Discharge should be reviewed as an adverse action for Retaliation claim (Doc 35 - Pg 22), and also initially stated it in her Complaint (Doc 2 - Pg 42 "Adverse action of retaliation made by Defendant was a Plaintiff's wrongful termination in form of a constructive discharge").

In the case of *West v. Marion Merrell Dow, Inc., 54 F.3d 493, 497 (8th Cir. 1995),* "Constructive discharge, like any other discharge, is an adverse employment action that will support an action for unlawful retaliation."

Later in its Memorandum the District Court mentioned the "constructive discharge" but applied same standard along with same facts and evidence of national origin claim for constructive discharge in a retaliation claim. (Doc 52 - Pg 21 Footnotes)

## III. The District Court erred in concluding Plaintiff's failure to exhaust administrative remedies with the EEOC.

The District Court concluded in its Memorandum, that religious discrimination claim is barred, because Plaintiff never mentioned "religion" in

EEOC charge and rather described the New Year as a national holiday. (Doc 52 -
Pg 18, including footnotes)

However, there are facts and evidence on the record that would still allow
the Plaintiff to present the Religious Discrimination claim.

**a)** Plaintiff listed facts related to the incident of not approving request for
day off on the New Year's Eve in timely (Doc 35-1 - Pg 22 "Date 04/21/2022"))
initial filing with EEOC. (Doc 35-1 - Pg 25) While not including exact words
"religious", Plaintiff stated important facts of the incident. The same facts were
used by the Plaintiff in internal complaint with Walmart Ethics[2], and investigator
correctly determined the issue. (Doc 32-3 - Pg 55 "ELENA MUKHINA … alleged
CRYSTAL CROLL … discriminated against her due to religious beliefs because
Croll did not permit her to have December 31, 2021, off…") During the interview
with EEOC Elena did ask to include events of religious discrimination but been
told that dates of the incident already not within necessary time frame for the
charge (Doc 58 - Pg 15 ¶i) and for that reason will not be included in the Charge of
Discrimination (Doc 35-1 - Pg 26).

---

[2] Plaintiff strongly objected on the record to the Walmart Ethic's performed
investigation for the numerous reasons. (Doc 35 - Pg 15,16)

In the case of *Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1321 (11th Cir. 2001)*, "In sum, we hold that a verified intake questionnaire that includes the basic information suggested by 29 C.F.R. § 1601.12(a) may constitute a charge for purposes of the Title VII statute of limitations when the circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire with the EEOC."

**b)** Plaintiff is claiming, that EEOC was negligent to Plaintiff complaint. (Doc 35 - Pg 13 "…[EEOC] did not investigate the matter properly") When representative called to schedule interview, Plaintiff was told to choose any "date of incident" as it wouldn't affect anything. Plaintiff was misled and believed that because of her timely initial submission every event would be included in the charge.

Due to the negligence of the scheduling representative, the Plaintiff now has to fight for her right to present the religious discrimination claim. In the case of *Mondy v. Crown Zellerbach Corp., 271 F. Supp. 258 (E.D.La. 1967)*:

> "…To bar a party from bringing a suit because the E.E.O.C. has shirked its statutory responsibility would indeed be to provide a hollow remedy and to inflict an undeserved penalty upon an innocent person." (Doc 35 - Pg 13)

In *cf. Forehand v. Florida State Hosp., 89 F.3d 1562, 1570-71 (11th Cir. 1996)* ("[A]ny deficiency in the EEOC's performance of its duties should not adversely affect a plaintiff's right to sue.")

In *Marie Patterson v. Georgia Pacific, LLC, No. 20-12733 (11th Cir. 2022)*, "We do not strictly construe EEOC charges, and we are reluctant to allow procedural technicalities to bar Title VII claims. *Gregory, 355 F.3d at 1280.*"

Moreover, the interviewer was very dismissive from the very beginning and repeated several times that because the Plaintiff doesn't speak English and cannot exactly pronounce phrases of co-workers and customers against her - it means there is no evidence and EEOC will not investigate her complaint but only will issue the Right to Sue. Plaintiff considers such handling of her complaint as an unconstitutional application of Title VII law, where the large group of people with foreign national origin are not able to protect their rights for discrimination-free workplace and cannot rely on support of assigned government agencies, due to linguistic characteristics such as inability to speak English. The 14th Amendment states, "nor shall any State … deny to any person within its jurisdiction the equal protection of the laws".

**c)** The Plaintiff is an adherent of religion Russian Folk Christianity. (Doc 2 - Pg 23) This religion formed in Russia arising from old times of paganism, long era

of atheism and modern Orthodox Christianity. (Doc 32-2 - Pg 3, lines 4-7 on p.9) The unique impact of the foregoing three characteristic exists <u>only</u> in Russia being the reason for Russian Folk Christianity to develop. Because of that, the Plaintiff often referred to the holiday as an important holiday for her "as a Russian person". (Doc 35-1 - Pg 25).

## IV. The District Court erred in concluding that facts and evidence on the record are insufficient to establish genuine issues for Trial.

### 1. National origin discrimination - Hostile work environment claim.

The District Court correctly defined the standard for the hostile working environment claim of 5 elements under *Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1248–49 (11th Cir. 2014)*. (Doc 52 - Pg 10)

The Honorable Judge concluded that Plaintiff is a member of protected class *id*. But erred in evaluating facts and evidence on the record to establish remaining elements.

**a)** For the 2nd element, under the EEOC[3] definition of harassment: "A hostile work environment based on national origin can take different forms, including ethnic slurs, ridicule, intimidation, workplace graffiti, physical violence, or other

---

[3] EEOC Enforcement Guidance on National Origin Discrimination, 11-18-2016, OLC Control Number EEOC-CVG-2016-2.

offensive conduct directed toward an individual because of his birthplace, ethnicity, culture, language, dress, or foreign accent". (Doc 35 - Pg 10) Plaintiff's Complaint alleges several forms of harassment from ridicule and ethnic slurs to the threat of physical violence. (Pg 9-11) Examples of cited abusive behavior from store customers as well as from employees conform with EEOC definition. Therefore, harassment existed, and 2nd element satisfied by Plaintiff.

**b)** For the 3rd element, the Court mistakenly concluded, that harassment was based <u>not</u> on the Plaintiff's protected characteristic, but because of lack of her professional suitability, because she "was a non-English speaking employee performing a job which required the ability to communicate in English". (Doc 52 - Pg 11) Plaintiff expressed her opposition in Memorandum (Doc 35 - Pg 6-9):

At first, EEOC guidelines 29 CFR § 1606.6 (b)(1) found Fluency-in-English requirements to be discriminatory on the basis of national origin. That conclusion is rising from the standard of immutable characteristic - the one that a person cannot change. Plaintiff's inability to speak English is one of such immutable characteristics, she has no choice of language to use. In *Garcia v. Gloor, 609 F.2d 156 (5th Cir. 1980),* "To a person who speaks only one tongue, language might well be an immutable characteristic like skin color, sex or place of birth."

According to EEOC, "An English fluency or English proficiency requirement is permissible only if required for the effective performance of the position for which it is imposed…".[4] Plaintiff was hired to Apparel Department, where she successfully completed her everyday job assignments while working with merchandise. (Doc 35 - Pg 7) Moreover, Plaintiff had plenty of experience in similar positions not only in her home country but also in Federal Way, WA Walmart store, working on the same position. (Doc 2 - Pg 5,7) Defendant by himself provided job description, where "Proficiency in English Language" was listed as "Preferred Qualifications" for Plaintiff. (Doc 32-3 - Pg 8)

Secondly, Defendant has established the "Common Language Policy" where it is clearly stated: "...if you're unable to speak the customer's/member's language, you should help the customer/member by locating an associate who speaks the customer's/member's language, if possible". (Doc 35-1 - Pg 10-12) It does imply that Defendant is hiring employees, who are unable to speak English. It also implies that employees who are unable to speak a common language are meeting with customers in the workplace. Defendant's argument (Doc 33 - Pg 8): "…communicating in the language most common to Walmart's customers and associates was a requirement of her job", - goes in contrary to adopted policy.

---

[4] EEOC Enforcement Guidance on National Origin Discrimination, 11-18-2016, OLC Control Number EEOC-CVG-2016-2.

According to *Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1299 (11th Cir. 2006)*, "[A]n employer's deviation from its own standard procedures may serve as evidence of pretext."

And at third, in the case of *EEOC v. WC&M Enters., 496 F. 3d at 400-02 (5th Cir. 2007)*, salesperson of Indian descent was repeatedly told that he should "just go back where [he] came from," and informed that "[t]his is America. . ." for approximately one year, that supported claim that he was subjected to a hostile work environment based on his national origin. Harassment against Plaintiff also included such comments: "Talk to me in English! Or go back to your Moscow!" (Doc 35 - Pg 10)

From the foregoing, it is possible to conclude, that Plaintiff was suitable for position she had, and that harassment was based on protected characteristic, which satisfy 3rd element for the hostile work environment claim.

**c)** For the 4th element, to find sufficient severity the Court used the standard of 4 elements per *Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris, 510 U.S. at 23, 114 S.Ct. 367).* (Doc 52 - Pg 10)

The Court erroneously concluded that "there remains no evidence that the harassment was severe or pervasive enough to alter the terms and conditions of her

employment"; "…there is no dispute that during her employment, Plaintiff's encounters did not prevent her from continuing her work." (Doc 52 - Pg 11)

In the case of *Fernandez v. Trees, 961 F.3d 1148 (11th Cir. 2020)*:

…"The Supreme Court has cautioned that harassment need not be . . . so extreme that it produces tangible effects on job performance in order to be actionable." *Miller, 277 F.3d at 1277*.";

…"This Court has held that harassment was pervasive when it occurred at a lower frequency. *See Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000)* (holding that harassment consisting of "roughly fifteen separate instances of harassment over the course of four months" was sufficiently pervasive).";

…"The Supreme Court has emphasized that "no single factor" is necessary to satisfy the objective inquiry of a hostile work environment claim. *Harris, 510 U.S. at 23*."

Plaintiff in the current case stating, that harassment happened "once or twice a day every day". (Doc 2 - Pg 11) Abusive behavior from customers was derogative, humiliating, included slander and even physical threat. (Doc 35 - Pg 11).

40

As for interference with the employee's job performance, the record has facts about Plaintiff developed health problems physical (Doc 2 - Pg - 27) and mental (Doc 58 - Pg 21,22) that affected her job. Plaintiff's complaints to the supervisors by themselves indicate presence of reasonable interferences with job performance, because the Plaintiff could not tolerate abuse and did seek help. In dialogue with Donald, Plaintiff kept questioning: "And what should I do?", in response to Donald's explanation about necessity for her to wait for the transfer to overnight. (Doc 35-1 - Pg 13-15)

From all the foregoing facts and evidence that Plaintiff presented on the record for the Court, it is possible to conclude, that Plaintiff satisfied 4th element for the hostile work environment claim.

**d)** For the 5th element, the Court mistakenly concluded absence of facts: "Plaintiff has not set forth facts to establish Wal-Mart's culpability". (Doc 52 - Pg 12)

According to EEOC Guidelines 29 CFR § 1606.8 (d) and (e), the employer is responsible for employees' and non-employees' actions, where the employer, its agents, or supervisory employees, knows or should have known of the conduct and fails to take immediate and appropriate corrective action. (Doc 35 - Pg 12)

Plaintiff provided evidence and facts about: her timely report of customer's harassment to manager Donald, about her waiting for the corrective action to be done, and about her after 6 weeks to find out Donald was not going to move Plaintiff and was amazed, she still wants to be transferred, Donald didn't even let the overnight manager know about transfer. (Pg 10-12) Only when Plaintiff insisted to the new manager Susan, that harassment is so intolerable that transfer should be done as soon as possible, Susan made a transfer within 24 hours (Doc 2 - Pg 20, ¶64) and "being the short staffed" did not preclude the transfer.

From the foregoing, it should not be possible to hold Defendant's argument as simple as "she asked to be transferred - and we did transfer her" (Doc 33 - Pg 3,4 ¶12,13). Plaintiff suffered harm from ongoing harassment due to absence of immediate and appropriate corrective action, therefore she proved act of discrimination according to EEOC Guidelines 29 CFR § 1606.8 (d) and (e).

That will make 5th element of the hostile work environment claim satisfied same as all the previous elements. Due to the District Court errors of facts and evidence, Motion for Summary Judgment was erroneously Granted.

## 2. Religious discrimination - Disparate impact claim.

As the District Court erred in misplacing the legal standard for reviewing this claim, facts and evidence could not be evaluated correctly. However, would

the proper standard been applied, Plaintiff presented sufficient evidence to survive Summary Judgment on this claim.

According to *Smith v. Miami-Dade Cnty., No. 14-12566, 13 (11th Cir. 2015),* "[D]isparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co., 540 U.S. at 52 (internal quotations omitted)."*

It is undisputed that Defendant has no written rules in effect for providing Unpaid Time off. (Doc 35-1 - Pg 35) For that reason, managers are following their own policies as they decide will be "fair" and facially-neutral in approving unpaid time off. Plaintiff provided evidence for two of such policies: "first come / first serve" by store manager Brandy (Doc 32-3 - Pg 25 "approval would be on a first come basis") (Doc 32-2 Pg 14, ¶17,18 of Pg 54), and "nobody getting the day off at the key event date[5]" by Crystal Croll (Doc 43 - Pg 20-24).

Both of these policies will violate the employee's right for reasonable accommodation for religious practice in accordance with 29 CFR § 1605.2. It is possible to conclude that 100% of employees requesting the day off at the key

---

[5] Defendant's designation of important dates for business which updated Quarterly. (Doc 32-3 - Pg 25)

event date will be rejected according to manager's Crystal policy and will not be able to complete the religious practice. The Plaintiff was denied the day off in the employee's Mobile App by manager Crystal who didn't know the reason for such request. (Doc 35-1 - Pg 44)

Same way the "first come / first serve", such policy doesn't recognize an employee's right for religious accommodation, but only relying on pure numbers, for example first 5 will be approved. If such number directly reflects the business necessity in remaining number of employees, such necessity should be conforming with the recent decision of the US Supreme Court *Groff v. DeJoy, 600 U.S. 447 (2023),* where Court held "what an employer must show is that the burden of granting an accommodation would result in <u>substantial</u> increased costs in relation to the conduct of its particular business." (Doc 35 - Pg 14) For the big retail store with many other associates, Plaintiff's absence on <u>one</u> night shift would not cause a <u>substantial</u> increased costs of business operation for Defendant. Moreover, Plaintiff offered to manager Crystal to cover requested day off by working extra day on the other date. (Doc 43 - Pg 22)

Further, Plaintiff provided evidence of the impact of the policy to her as a member of the protected class. (Doc 35 - Pg 17) She received 2 penalty points (Doc 35-1 - Pg 43). Not only accumulation of these points leads to termination (Doc. 32-3, Page1D2 75), but it also put Plaintiff in an unequal position comparing

44

to other employees in front of the termination. While others have at least 5 chances to miss the scheduled due to any unpredictable reason, Elena would have only 3 chances just because she practiced her religion. Which is a material change in terms, conditions or privileges of employment.

### 3. Retaliation - Retaliatory harassment.

a) The District Court correctly defined the legal standard of 3 elements for reviewing retaliation claim in its analysis, concluding the first element is not in dispute (protected activity). (Doc 52 - Pg 20,21)

However, the District Court erred in concluding that Plaintiff's evidence is insufficient to satisfy the remaining two elements (adverse action and causation).

As an adverse employment action Plaintiff claimed "retaliatory harassment" and "constructive discharge". To prove an adverse employment action in the context of a retaliation claim, the plaintiff must show that the challenged action materially adverse, meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); accord Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008).*

45

Facts regarding "retaliatory harassment" were erroneously interpreted by the Honorable Judge as "several instances of frustrating events". (Doc 52 - Pg 21) However, Plaintiff provided detailed citation to the record and relevant law, where each event happened exactly in response to Plaintiff's participation in protected activity, due to that sequence, casual connection for 3rd element can be established. (Doc 35 - Pg-18-21) For example, the District Court referring to claimed by Plaintiff change of co-worker's attitude. (Doc 52 - Pg 21) In her Complaint, Plaintiff did state it happened after filing the Walmart Ethic's Complaint. (Doc 2 - Pg 26 ¶c "Those who were previously friendly with Elena suddenly began to turn away when they met.")

However, Plaintiff didn't mean the "simple lack of good manners", as cited by the Honorable Judge (Doc 52 - Pg 20,21) but the breach of confidentiality of formal Complaint as a part of protected activity. According to *Cf. Mogenhan v. Napolitano, 613 F.3d 1162, 1166-67 (D.C. Cir. 2010)*, (ruling it was materially adverse to publicize an employee's EEO complaint to her colleagues …). (Doc 35 - Pg 20,21)

Therefore, when information about Plaintiff's formal complaint was disclosed to coworkers, who formed an opinion about it, and changed their attitude to Elena, it does constitute an adverse action as a breach of confidentiality. Because Plaintiff knew her future complaints will be public at the workplace, it did

46

dissuade her from reporting harassment when it recurred. (Doc 2 - Pg 29,30, ¶88,89) Same with disproportional workload, followed after Plaintiff's transfer to the night shift. (Pg 17)

The District Court erroneously concluded that casual connection could not be established, because "the record is clear that most of those events took place prior to her report of discrimination." (Doc 52 - Pg 21) However, protected activity does not only include the "report of discrimination" in form of complaint. Plaintiff also opposed some job assignments, reasonably believed them to lead to more harassment and it happened before formal complaint. (Doc 2 - Pg 13 ¶a, Pg 19 ¶60)

According to *Little v. United Technologies, 103 F.3d 956, 960 (11th Cir. 1997)*, "We previously have recognized that a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *See Rollins v. State of Fla. Dept. of Law Enforcement, 868 F.2d 397, 400 (11th Cir. 1989).*"

Also, even an intention to file a complaint is considered to be a protected activity. In the case of *EEOC v. L.B. Foster Co., 123 F.3d 746, 754 (3d Cir. 1997)* was found, that plaintiff had engaged in protected activity when she informed her

47

employer, she intended to file a sex discrimination charge, even though she later changed her mind.

Plaintiff provided plenty of facts about actions that happened <u>after</u> her participation in protected activity and cited them in her Memorandum summarizing those as "retaliatory harassment" (Doc 35 - Pg 20,21), which is alone "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination". And further, when Plaintiff met with the need to participate in protected activity again (Doc 2 - Pg 29,30, ¶88), she was already dissuaded from doing that due to Defendants "retaliatory harassment" actions, <u>not</u> due to national origin discriminating harassment. As a result, Plaintiff had to quit, because believed that continuing to participate in protected activity again will lead to the same "retaliatory harassment". Therefore, her resignation followed from retaliative action in response to alleged retaliation will itself constitute adverse action for the retaliation claim.

The foregoing will satisfy the 3rd element of retaliation claim to survive summary judgment.

## V. Application of a "reasonable person" standard in reviewing claims under Title VII is unconstitutional.

In the current case, from the foregoing argument (Pg 40-48), Plaintiff believes to conform with applied legal standard for Hostile Work Environment claim. However, the District Court in its analysis uses a "reasonable person" standard (Doc 52 - Pg 9,10 "Subjective perception must be objectively reasonable") and concludes that Plaintiff did not satisfy the "objectivity" requirement for harassment as "her belief is not objectively reasonable". (Doc 52 - Pg 11) Plaintiff considers Title VII to be unconstitutional, if for enforcement of claims brought under this law, "must" be applied a "reasonable person" standard. Plaintiff believes that Title VII, if applied in such manner, contradicts to 14th Amendment, where "nor shall any State … deny to <u>any person</u> within its jurisdiction the <u>equal protection of the laws</u>".

a) Despite the "equal protection" to "any person", the legal system offers to provide protection only to such person, who is being compared and successfully comply with the "reasonable person" standard. Meaning, that if a "reasonable person" finds harassment occurred offensive to him/her, so are you. According to Merriam-Webster.com Legal Dictionary:

Reasonable person is a fictional person with an ordinary degree of reason, prudence, care, foresight, or intelligence whose conduct, conclusion, or expectation in relation to a particular circumstance or fact is used as an objective standard by which to measure or determine something...

The "comparation" to a fictional standardized person itself belittles and devalues the experience of real people, each of whom are diverse and unique.

b) By requiring the application of the "reasonable person" standard, the law calls for speculation, which is a legal allowable ground for objection in the Court. Because guessing about what might have happened if the other person were in the Plaintiff's place will be inadmissible from the witness. So why would the trier of fact himself guess the situation from the perspective of fictional person? Instead, the Plaintiff is the one claiming to be harmed by Defendant's actions and the one who provides facts and evidence in order for trier of facts to see the situation from Plaintiff's perspective.

Moreover, Plaintiff in the current case provided facts for comparison with herself being employed with same company before, on the same position, and not being harmed by Defendant. (Doc 2 - Pg - 5-7) Plaintiff, therefore, was enough "reasonable person" back then. And any loss of being "reasonable" is a harm itself. For example, any influence of emotions is caused by stress that any reasonable person would experience and then lose its reasonableness. Where, assuming,

50

reasonableness is not lost, the standard in issue seems to be clearing out the long-term impact.

c) Not only the "reasonable person" is fictious, but for everyone it will be different. Plaintiff on the record earlier suggested to use different formulation in accordance with Plaintiff's unique characteristics. (Doc 58 - Pg 8,9)

According to the Study[6], change of wording for the "reasonable person" standard happened before in *Ellison v. Brady 924 F.2d 872 (9th Cir. 1991)*, where "reasonable person" standard changed to "reasonable woman."

However, the same study concluded that change of wording does not change the way jurors, or the Judge will evaluate the situation. *Id.* "The courts should not be misled into believing that potential problems in determining sexual harassment cases may be solved by a simple semantic choice." Because each trier of facts holds their own "reasonable person" in mind. Which for one will tolerate any abuse, and the other one will not. Therefore, application of this standard is unjust and undetermined, based on fiction.

---

[6] Shoenfelt, Elizabeth L., et al. "Reasonable Person versus Reasonable Woman: Does It Matter?" American University Journal of Gender Social Policy and Law 10, no. 3 (2002): 633-672.

From the foregoing, Plaintiff believes, the way Title VII is applied in the case, requiring use of "reasonable person" standard, is depriving Plaintiff from constitutional right to be equally protected by law, due to speculation and fiction.

## VI. Plaintiff satisfied notification requirement for religious accommodation claim.

In the current case, Plaintiff presented Disparate Impact claim for religious discrimination. According to a recent decision, *Hebrew v. TDCJ, No. 22-20517 (5th Cir. 2023)*, "As the Supreme Court has held, "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *Abercrombie, 575 U.S. at 773, 135 S.Ct. 2028*."; An employer need not even know about the employee's religious practice; it violates Title VII so long as it takes the action "with the motive of avoiding the need for accommodating a religious practice." *Abercrombie, 575 U.S. at 774, 135 S.Ct. 2028* (emphasis in original)."

From the foregoing, in the current case, Defendant need not even know about the Plaintiff's religious practice. By almost immediate denial of the day off request via the App without knowing the reason for it, manager Crystal did avoid giving accommodation to anybody. Plaintiff voluntarily approached Crystal to

explain the reason and didn't even have to do it as her rights already were violated under used by Crystal facially-neutral policy.

However, reviewing religious claim as a disparate treatment claim, the Defendant and the District Court held that Plaintiff was required to let manager know about the "religious holiday" by using the exact word "religious". (Doc 52 - Pg 18) The Plaintiff doesn't see the law implies her to do it.

For sure, 29 CFR § 1605.2 (c)(1) describes that employer's duty to accommodate starts with employee's notification of a religious practice. However, the language of 29 CFR § 1605.1 admits two possible situations - when "religious" nature of a practice or belief is in issue and when it is not. _Id._ "In those cases in which the issue does exist, the Commission will define religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." From the foregoing statutes it is easy to conclude that an employee talking about his "religious practice" may either clearly identify it as "religious", or, through the narrative, demonstrate the religious nature of the request.

In the case of _Toronka v. Continental Airlines, Inc., 649 F. Supp. 2d 608 (S.D. Tex. 2009)_, "Continental argues that it was unaware of Toronka's religious beliefs, and, thus, it was impossible for Continental to subject Toronka to harsh

53

employment conditions on account of his religious beliefs"; the Court concluded, that "Although Continental asserts that Toronka never informed it of his belief in the power of dreams, Toronka's complaint alleges that he communicated his beliefs to Continental at the time of the accident … In construing all reasonable inferences in Plaintiff's favor and accepting all factual allegations pleaded as true, the Court finds that Toronka has asserted a claim for religious discrimination that is "plausible" on its face."

According to decision of this Court in *Carbone v. Cable News Network, Inc., No. 17-10812 (11th Cir. 2018)*, "Rules 8, 12, and 56 answer the question of sufficiency by requiring the plaintiff to allege a claim that is plausible on its face and to present evidence sufficient to create a triable issue of fact."

Plaintiff in the current case provided evidence, that she: was quite insistent in her request by coming to Crystal even after denial and by asking several times during the conversation if something can be done about her request; she made Crystal informed about the situation: "We haven nobody in this city and just we are two. And we will be alone, separated. Its a main holiday in the year, in the life", "We don't celebrate Christmas, we celebrate New Year" (Doc 43 - Pg 21,22); after the conversation Elena concluded the need to resign, or "we going to live separately from each other all year [about daughter]?" (*id*. Pg 24); she completed

necessary religious practice by not coming to work. Further in the Complaint, Plaintiff in details described her beliefs. (Doc 2 - Pg 23,24)

All the foregoing, showing strong "beliefs as to what is right and wrong which are sincerely held" in accordance with definition of the practice being "religious" per 29 CFR § 1605.1. Crystal Croll, if had any desire to act in accordance with Title VII, would either recognize the request as religious, or would question further if such an explanation seemed necessary. In the case of *Adeyeye v. Heartland Sweeteners LLC, 721 F.3d 444, 451 (7th Cir. 2013),* been stated: "If the managers who considered the request had questions about whether the request was religious, nothing would have prevented them from asking [the employee] to explain a little more about the nature of his request…"

In the current case, Plaintiff made all possible effort notifying Defendant about the need of religious accommodation, but met with such indifference from Crystal Croll, that the policy she applied (nobody is getting day off for New Year) or her lack of training about discrimination on the workplace led to violation of Title VII, 29 CFR § 1605.2 (c)(1).

**VII. Judicial Bias and Prejudice against Plaintiff affected the final decision.**

Appellant alleges that granting the Motion for Summary Judgment in favor of Defendant was erroneous and based on Judicial bias in the District Court.

According to U.S. Const., 14th Amend., Plaintiff has a right for an Impartial Decision Maker and Equal protection of the laws.

Under the Equal Protection Clause, the Plaintiff belongs to a Suspect Classifications by National Origin and entitled to equal protection. "The traditional indicia of a suspect classification are whether the class is "saddled with such disabilities or subjected to such a history of purposeful unequal treatment or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1293, 36 L.Ed.2d 16 (1973).* Whether the classification is based on an immutable characteristic is sometimes an indication of a suspect class. *See Frontiero v. Richardson, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973)"*

The Supreme Court of Alabama in its Policy for Judicial System[7] defines "Equal access" as a main role of an interpreter in the judicial proceeding, because Non-English-Speaker placed in an unequal position and suffers its powerlessness and disadvantage in front of the English Speaker:

---

[7] Per "Alabama's Unified Judicial System Policies and Procedures for Foreign Language Interpreters" of 2008.

"Section 5 "Equal access: The interpreter's purpose is to place each NES[8] individual in a situation equivalent to that of any English-speaking person. Accordingly, the interpreter should interpret for each NES individual everything that an English speaking person would hear"

Plaintiff's language is also an immutable characteristic, because she does not hold any other language due to her place of origin - USSR (currently Russia) and has no choice or ability to change it.

"To demonstrate a violation of due process because of judicial bias, a claimant must show either actual bias or an appearance of bias." *United States v. Nickl, 427 F.3d 1286, 1298 (10th Cir. 2005)* "Actual bias may be shown in two ways: `by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed.'" *Perkins, 748 F.2d at 1532 (quoting United States v. Nell, 526 F.2d 1223, 1229 (5th Cir. 1976))*

The legal term for <u>bias</u> is - n. the predisposition of a judge, arbitrator, prospective juror, or anyone making a judicial decision, against or in favor of one of the parties or a class of persons. This can be shown by remarks, decisions contrary to fact, reason or law, or other unfair conduct.[9]

---

[8] NES - Non-English-Speaker.
[9] The People's Law Dictionary by Gerald and Kathleen Hill.

<u>1. Inappropriate comments and discussions.</u>

Appellant provided facts above (Pg 18-20), arising from official transcript of Scheduling Conference with assigned to the case Honorable Judge William E. Cassady. (Doc 54 Transcript)

The Judge expressly stating that Plaintiff's inability to speak English is a problem, questions Plaintiff's ability to carry out the burden of proof for the case due to not speaking English, while the burden of proof depends strictly on the evidentiary and factual sufficiency[10] (Doc 54 Transcript - Pg 3,4), defines as a problem providing to the Plaintiff and use of a microphone communication system, compares the Plaintiff with a person with stuttering illness. (Doc 54 Transcript - Pg 20,21)

The Honorable Magistrate Judge also made an accent on the Plaintiff's pro se status (Doc 54 Transcript - Pg 21) several times in violation of 28 U.S. Code § 1654, where "In all courts of the United States the parties may plead and conduct their own cases personally…". If the law somehow implies necessity of knowing

---

[10] Per The People's Law Dictionary by Gerald and Kathleen Hill, burden of proof is - n. the requirement that the plaintiff show by a "preponderance of evidence" or "weight of evidence" that all the facts necessary to win a judgment are presented and are probably true.

English, that would be unconstitutional in violation of 14th amendment's Equal Protection Clause.

Appellant is also alleging inappropriate comment from the Court Deputy prior to the beginning of the Motion hearing on 12/13/2023, such as: "Why do we hear Russian speech?"

2. Procedural violations.

Appellant is relying on the facts provided above with regards to the official transcript of the Motion hearing with Honorable Judge Jeffrey U. Beaverstock held on 12/13/2023. (Doc 70 Transcript)

"Alabama's Unified Judicial System Policies and Procedures for Foreign Language Interpreters" from the Supreme Court of Alabama, 2008 states the following:

Section 10.1 "(A) According to the law, an interpreter shall be appointed when the court, after examination, determines that: (1) the party cannot understand and speak English well enough to participate fully in the proceedings and/or assist counsel;"

Section 3.2 "The court shall give preference to an AOC (Alabama Administrative Office of the Courts) certified interpreter.

59

When appointing an interpreter, the court should consider the following: the interpreter's native language; how the interpreter learned English or the foreign language; the interpreter's knowledge of idioms, slang, and dialect in both languages; etc.

Section 3.4 "After an interpreter's appointment, the court may determine that an interpreter is not adequately competent, has engaged in misconduct, or is otherwise unable to perform the requested necessary interpreting services, or that the interpreter is not necessary. The court may in its discretion remove the interpreter."

Section 3.5 "Pursuant to Ala. Code (1975) § 15-1-3, the interpreter, upon appointment, "shall swear under oath that he or she will render a true and clear interpretation to the best of his or her skill and judgment."

Appellant admits that the Court appointed an interpreter for her to be present during the hearing. However, in violation of the foregoing cited policy, the District Court did not consider necessary factors while appointing interpreter of an Armenian origin Noune Oganessian, certified by California, which Plaintiff claims led to wrongful interpretation, distraction and stress during the hearing. (Doc 58 - Pg 17,18) The Judge didn't bring the interpreter to required Oath to make a true translation in violation Federal Rule of Evidence 604. And in violation of the foregoing policy, the Judge didn't remove the interpreter, despite several instances

60

of misunderstanding by the Plaintiff, the Judge and by Defendant's Counsel. (Doc 70 Transcript - Pg 2,3,10,14)

Appellant has true reasons to allege that prejudice affected the final decision because of biased predisposition of a District Court, due to Plaintiff, as a pro se and being non-English-speaker indeed could not prevail in the case. Plaintiff believes that during the Motion hearing, the Honorable Judge seen complications of the procedure while dealing with Plaintiff as a non-English-speaker and to avoid them decided the case summarily.

In *Anderson v. Vanguard Car Rental USA Inc., 427 F. App'x 861, 863-64 (11th Cir. 2011),* "The general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources, and must be focused against a party to the proceeding." *Hamm v. Members of B of Regents, 708 F.2d 647, 651 (11th Cir. 1983) (citation omitted).* "An exception to that rule is made when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *Id.".*

## Conclusion

For the foregoing facts and arguments, the Appellant is entitled for the District Court's decision on the Motion for Summary Judgment to be Reverse on all counts and for the case to be Remand for the Trial. Due to the alleged Judicial Bias, Appellant requests the assigned Presiding Judge and Magistrate Judge to be recused from the case due to lack of impartiality.

Date: *07/29/24*

_Elena Mukhina - Appellant (Pro Se)_

## Certificate Of Compliance

I, Elena Mukhina, hereby certify that the Appellate Brief submitted is compliant with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12 845 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Rule 32-4 of the Eleventh Circuit Rules. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman font.

_Elly_          07/29/24
(Signature and date), pro se

13452 Rooster Ln, Foley AL 36535
(Address)

2064131296
(Phone Number)

## Certificate of Service

I, Elena Mukhina, hereby certify that a copy of the foregoing **APPELLANT'S**

**OPENING BRIEF** was automatically and electronically served via CM/ECF

system to Jonathan S. Harbuck Attorney on the date of filing.

I also certify that required 4 paper copies of the foregoing **APPELLANT'S**

**OPENING BRIEF** were mailed via USPS to the U.S. 11th Circuit Court of

Appeals on 07/29/2024 at:

United States 11th Circuit Court of Appeals

Office of the Clerk

56 Forsyth Street, N.W.

Atlanta, Georgia 30303

_Elun_    _07/29/24_

(Signature and date), pro se

_13452 Rooster Ln, Foley AL 36535_

(Address)

_2064131296_

(Phone Number)

xiv